## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| AMERICAN REGISTRY OF PATHOLOGY, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 04-1678 (RMC) |
| OHIO CASUALTY INSURANCE CO., | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

The American Registry of Pathology ("ARP") sues its insurance carrier, Ohio Casualty Insurance Co., for refusing and failing to defend ARP in two recent lawsuits. In the District of Columbia, an insurer's duty to defend is defined by comparing the allegations of a complaint with the terms of the insurance policy. Facts outside those two documents, even if known to the insured and/or insurer, are not deemed relevant to the insurance company's duty to defend. Under these precepts, Ohio Casualty had no duty to defend ARP. Summary judgment will be granted to Ohio Casualty and the complaint will be dismissed.

## I. BACKGROUND

### A.    Underlying Facts

The facts that are relevant to this contract dispute are not contested. ARP is a D.C. nonprofit corporation established pursuant to 10 U.S.C. § 177. It is "not an agency or establishment of the United States government," 10 U.S.C. § 177(a)(1), but it works in close collaboration with the Armed Forces Institute of Pathology ("AFIP"). AFIP is a joint entity of the Army, Navy, and Air

Force and serves as the military medical institute dedicated to research, education, and consultation in pathology for the Department of Defense. *See generally* 10 U.S.C. § 176. "Consultation" refers, *inter alia*, to providing a second opinion on tissue samples to determine if they are cancerous.

Sometime prior to April 1993, Angelica Stevens sought a position in an AFIP cytology laboratory by applying to AFIP directly, but a "hiring freeze" precluded AFIP from hiring Ms. Stevens. AFIP turned to ARP — which, by law, can "enter into contracts with the [AFIP] for the provision of such services and personnel as may be necessary," 10 U.S.C. § 177(b)(1) — and asked ARP to hire Ms. Stevens. ARP did so on behalf of AFIP and Ms. Stevens began work in April 2003 as a cytotechnologist at the AFIP Cytology Center, which processes some thirty to forty thousand gynecological slides per year for pathological analysis. Ms. Stevens worked under the direction and control of AFIP, and ARP remained involved only in the administrative and ministerial aspects of her employment such as processing her paychecks, maintaining her leave balances, and other similar functions. Pl.'s Mem. Ex. 4 (*Sweeney v. AFP*, 00-2390 (PLF) Op. dated July 31, 2002).

On October 4, 2000, Deborah Sweeney and her husband filed a lawsuit against ARP and Ms. Stevens alleging that Ms. Stevens's negligent analysis of a PAP smear taken of Ms. Sweeney in March 1996 delayed the diagnosis and treatment of Ms. Sweeney's cervical cancer. As amended, that complaint alleged, "[u]pon information and belief, the defendant American Registry of Pathology is the principal for defendant Stevens and vicariously liable for her actions." *See* Pl.'s Mem. Ex. 8 at ¶ 6. ARP sent a demand to Ohio Casualty that it assume ARP's defense and pay any judgment or settlement in the *Sweeney* lawsuit. Pl.'s Mem. Ex. 10. Ohio Casualty declined, relying on an exclusion from coverage in the relevant insurance policies. *Id.* Ex. 11. Paying for its own defense, ARP then filed a motion in the *Sweeney* suit to have the Court certify that Ms. Stevens was

an employee of the United States and to substitute the United States for Ms. Stevens as a defendant.

Judge Paul Friedman, who was presiding over *Sweeney v. ARP*, ruled that Ms. Stevens "was neither

an ARP employee nor an independent actor" but was an employee of the United States and acting

within the scope of her employment when she conducted the relevant testing of the PAP smear. *Id.*

Ex. 8 at 16.  Although ARP notified Ohio Casualty that Judge Friedman had ruled that Ms. Stevens

was not an ARP employee when testing the Sweeney PAP smear, the insurance company continued

to decline coverage. *Id.* Ex. 12.

       At the close of discovery in the *Sweeney* lawsuit, ARP moved for summary judgment.

Finding that "ARP cannot be held vicariously liable" for Ms. Stevens's alleged negligence, Judge

Friedman granted partial summary judgment to ARP and dismissed all claims against ARP except

for alleged negligent hiring. *Id.* Ex. 15 (*Sweeney* Mem. Op. dated January 30, 2004).  ARP's counsel

notified Ohio Casualty of this result and argued that the alleged negligent hiring clearly fell within

the scope of its insurance policies. *Id.* Exs. 13 & 16.  Ohio Casualty refused to alter its position. *Id.*

Ex. 18.  ARP then entered into mediation with the *Sweeney* plaintiffs and paid $250,000 to settle

their claims. *Id.* Exs. 19-20.  Ohio Casualty did not provide counsel or otherwise assist in ARP's

defense in *Sweeney* and has not paid for the cost of settlement. *Id.* Ex. 6 (Request for Admission No.

45).

       A second lawsuit, *Hatton v. ARP*, 02-cv-1852 (PLF), was filed by Mary J. Hatton

against ARP and Ms. Stevens on September 19, 2002.  Pl.'s Mem. Ex. 21.  Ms. Hatton is the

executrix of the estate of her sister, Cindy Jill Miller, whose PAP smear was allegedly misinterpreted

by Ms. Stevens in June 1998. *Id.* Ex. 22.  As a result, cancerous cells were undetected but continued

to grow and spread, leading to Ms. Miller's death on October 2, 2001. *Id.* The *Hatton* complaint, as amended, alleged:

> Upon information and belief, the defendant, American Registry of Pathology, was one of the employers and principals responsible for defendant Stevens and [was] both vicariously and independently liable for her actions. The defendant ARP was involved with and had a duty of continued supervision over Angelica Stevens. ARP also knew or should have known that Angelica Stevens was not competent. They had an independent duty to take action to prevent her from committing continued malpractice, whether or not some other entity may have had a similar duty.

*Id.* ¶ 15. ARP notified Ohio Casualty of the *Hatton* lawsuit, but Ohio Casualty eventually declined coverage based on the same policy exclusion it relied upon when it declined coverage for *Sweeney*. *Id.* Exs. 6 (Requests for Admission 17-19) & 23-26.

ARP was forced to retain its own counsel to conduct the lawsuit. It again moved to substitute the United States for Ms. Stevens and Judge Friedman, to whom *Hatton* had been assigned as a related case, again granted that motion. *See* Pl.'s Mem. Ex. 27 (*Hatton v. ARP*, 02-1852 (PLF) Op. dated Mar. 22, 2004 (noting that the facts in the two suits were "identical" and adopting "the reasoning laid out in the *Sweeney*" decision). ARP notified Ohio Casualty of Judge Friedman's decision, but the insurance company nonetheless formally denied coverage. *Id.* Exs. 14 & 18. Forced to defend itself, ARP entered mediation with the *Hatton* plaintiffs and settled the suit for $75,000. *Id.* Ex. 6 (Request for Admission No. 47). Ohio Casualty did not provide counsel or otherwise assist in the defense of ARP or pay the settlement of the *Hatton* lawsuit. *Id.*

### B.    Insurance Provisions

Ohio Casualty is the successor in interest to the Great American Insurance Company, from whom ARP obtained the insurance policies at issue. *See* Answer ¶ 10. Great American issued

two policies to ARP: Policy No. MAC-705-82-05, covering October 6, 1995 to October 6, 1996; and

Policy No. MAC-705-66-82-07, covering October 6, 1997 to October 6, 1998 (collectively, "the

Policies"). Pl.'s Mem. Exs. 5 & 7. Both Policies contained the following description of coverage:

> [Ohio Casualty] will pay those sums that the insured becomes legally
> obligated to pay as damages because of that "bodily injury" . . . to which
> this insurance applies. [Ohio Casualty] will have the right and duty to
> defend any "suit" seeking those damages.

*Id.* Ex. 5 at p. 8; Ex. 6 at p. 34. The Policies define "bodily injury" to include "bodily injury,

sickness or disease sustained by a person, including death resulting from any of these at any time."

*Id.* Ex. 5 at p. 17. The "insureds" include, in relevant part, ARP's "employees, other than [ARP's]

'executive officers,' but only for acts within the scope of their employment . . . or while performing

duties related to the conduct of [ARP's] business. . . . [But] no employee is an insured for . . . 'bodily

injury' or 'personal injury' . . . arising out of his or her providing or failing to provide professional

health care services." *Id.* at pp. 13-14.

Both Policies also contained exclusions for "Testing or Consulting Errors and

Omissions" ("Testing Exclusions"). *Id.* Ex. 5 at p. 30; Ex. 7 at p. 57. In the 1995 – 1996 Policy, the

Testing Exclusion stated, in pertinent part, that general liability coverage under the policy would:

> not apply to 'bodily injury' . . . arising out of (1) An error, omission, defect
> or deficiency in any test performed, or an evaluation, a consultation or
> advice given by or on behalf of any insured; or (2) The reporting of or
> reliance upon any such test, evaluation, consultation or advice.

*Id.* Ex. 5 at p. 30. In the 1997 – 1998 Policy, this exclusion was slightly re-written to provide that

general liability coverage would:

> not apply to "bodily injury" . . . arising out of: (1) an error, omission, defect,
> or deficiency in : a. any test performed; or b. an evaluation, a consultation
> or advice given by or on behalf of any insured; or (2) the reporting of or

reliance upon any such test, evaluation, consultation or advice; or (3) an error, omission, defect or deficiency in experimental data or the insured's interpretation of that data.

*Id.* Ex. 7 at 57.

It was these two Testing Exclusions that provided the stated justification for Ohio Casualty's decision to deny coverage in the *Sweeney* and *Hatton* lawsuits. Ohio Casualty perceived Ms. Stevens to be an "employee" of ARP and read the complaints as claiming, *inter alia*, negligent performance of the cytopathology testing and negligent interpretation of the testing results. Pl.'s Mem. Ex. 11 (April 6, 2001, Letter denying coverage for *Sweeney*) at p. 3; *see also id.* Ex.18 (July 13, 2004, Letter denying coverage for *Hatton*). Inasmuch as the Testing Exclusions barred coverage for claims arising from an error or omission in any test or consultation performed by or on behalf of an insured, Ohio Casualty declined coverage.

Based on Ohio Casualty's refusal to indemnify ARP against the *Sweeney* and *Hatton* lawsuits, ARP filed this action on September 30, 2004. ARP seeks damages to recover the money it spent defending and settling *Sweeney* and *Hatton*, as well as punitive damages based on Ohio Casualty's alleged bad faith. Am. Compl. at pp. 19-20. Discovery has been completed, and both parties now move for summary judgment.

## II.  LEGAL STANDARDS

### A.    Jurisdiction and Choice of Law

The Court has jurisdiction in this case based on diversity of citizenship under 28 U.S.C. § 1332. *See* Am. Comp. ¶¶ 1 - 3. Thus, the Court must apply District of Columbia law to determine what state's substantive law will apply to ARP's claims. *See Reeves v. Eli Lilly & Co.*, 368 F. Supp. 2d 11, 25 (D.D.C. 2005). "Under District [of Columbia] law, insurance contracts are

governed by the substantive law of the state in which the policy is delivered." *Liberty Mut. Ins. Co. v. Travelers Indem. Co.*, 78 F.3d 639, 642 (D.C. Cir.1996).  Although the parties do not specify, they do not contest that the policies were delivered to ARP in the District of Columbia.  Indeed, ARP is incorporated and located in the District of Columbia, and the parties argue D.C. substantive law. Therefore, the Court will apply local law to ARP's claims.

### B.    Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56©; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  To determine which facts are "material," a court must look to the substantive law on which each claim rests.  *Anderson*, 477 U.S. at 248 (1986).  A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action.  *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment.  *Id.*  In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving

party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position, *id.* at 252, and may not rely solely on allegations or conclusory statements, *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Greene*, 164 F.3d at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

### III.  ANALYSIS

ARP argues that Ohio Casualty breached the insurance contracts by failing to provide coverage for the *Sweeney* and *Hatton* lawsuits. Ohio Casualty argues that the contracts excluded coverage under the Testing Exclusions. In short, ARP argues that, as a matter of law, Ohio Casualty was incorrect when it denied coverage; and Ohio Casualty argues that, as a matter of law, it acted correctly. Both parties therefore agree on one thing: the Court can and should resolve this question on summary judgment.

#### A.  The "Eight-Corners Rule"

There are two approaches to determining an insurer's obligation to cover a claim. Under the traditional approach, an insurance company looks only at the four corners of the complaint to determine the scope of the allegations and then looks only at the four corners of the relevant policy to determine the scope of coverage. This is called the "eight-corners rule." *Stevens v. United Gen. Title Ins. Co.*, 801 A.2d 61, 63 (D.C. 2002). An alternative approach, accepted in a growing number of jurisdictions, allows a factual exception to the traditional rule when true facts, not pled but reasonably ascertainable, affect the matter of coverage. *See, e.g., Fitzpatrick v. Am. Honda Motor*

*Co.*, 575 N.E.2d 90, 93 (N.Y. 1991).  There is no dispute that the Polices are governed by the law

of the District of Columbia and that the District of Columbia follows the eight-corners rule.  *See*

*Stevens*, 801 A.2d at 63.

Not so long ago, in fact, a split panel of the D.C. Court of Appeals "reaffirm[ed] [its]

adherence to the traditional 'eight corners' rule . . . ."  *Id.*  Over a dissent, that court expressly

"decline[d], at this point, to adopt the factual exception to the traditional rule."  *Id.*  The dissenter,

Judge Schwelb, would have adopted the more modern approach and suggested that "the present case

may warrant en banc consideration." *Id.* at 72 n.12 (Schwelb, J., dissenting).  Despite this broad hint,

the D.C. Court of Appeals has not considered the issue en banc and the eight-corners rule continues

to apply in the District of Columbia.

The D.C. Court of Appeals explained that the eight-corners rule focuses solely on the

documents at issue; facts outside the complaint and insurance policy are irrelevant:

> Under [the eight-corners rule], an insurer's duty to defend is determined by
> comparing the complaint . . . with the policy.  If the facts alleged in the
> complaint . . . would give rise to liability under the policy if proven, the
> insurer must defend the insured. . . . The rule potentially allows an insurer
> to deny its insured a defense even if the insurer is aware of facts which, if
> pleaded, would entitle the insured to a defense.

*Id.* at 66 n.4 (citing Douglas R. Richmond, *Reimbursing Insurers' Defense Costs: Restitution and

Mixed Actions*, 35 San Diego L. Rev. 457, 461-62 (1998)).  The court was clear that an insurer's

"obligation to defend 'is not affected by facts ascertained before suit or developed in the process of

litigation or by the ultimate outcome of the suit.'"  *Stevens*, 801 A.2d at 67 (quoting *Travelers Indem.

Co. of Ill. v. United Food & Commercial Workers Int'l Union*, 770 A.2d 978, 987 (D.C. 2001)).

The *Sweeney* and *Hatton* complaints alleged two types of claims against ARP, both grounded in ARP's relationship to Ms. Stevens: vicarious liability based on an employer-employee relationship, and negligent hiring based on the fact that ARP was responsible for hiring Ms. Stevens. Because ARP argues that the claims are essentially unrelated, the Court will analyze them separately under the eight-corners rule.

### B.    The Vicarious Liability Claims

The beginning of the analysis lies with the Policies.   Specifically, the Testing Exclusions in question apply to claims based on (1) any "bodily injury" (2) "arising from" (3) "an error, omission, defect, or deficiency in" (4) "any test . . . evaluation . . . consultation . . . or advice" (5) performed "by or on behalf of any insured."  *See* Pl.'s Mem. Ex. 5 at 30; Ex. 7 at 57.  There seems to be no dispute that the first four elements are present here — that is, the *Sweeney* and *Hatton* claims are based on bodily injuries arising from an error, omission, defect, or deficiency in tests or consultations.  ARP's primary argument is that the fifth element is lacking: the Testing Exclusions do not apply to the vicarious liability claims because the tests were not performed by "an insured."

First, ARP contends that because Judge Friedman ruled that Ms. Stevens was not ARP's employee, it necessarily follows that she was not an "insured" under the Policies.  Pl.'s Mem. at 28-29.  This Court has no reason to disagree with ARP or Judge Friedman.  Nonetheless, the point is beside the point.  Under the law of the District of Columbia, it is the facts *alleged* in the complaint, not the facts ultimately *established* during litigation, that control the applicability of insurance coverage.  *See Stevens*, 801 A.2d at 67.  No matter how vociferously — or correctly — ARP argues that Ms. Stevens was not its employee, it cannot avoid the fact that both the *Sweeney* and *Hatton* complaints **alleged** that she was an ARP employee.  Pl.'s Mem. Ex. 9 at ¶ 6; Ex. 22 at ¶ 15.  On that

basis, Ohio Casualty argues, it properly concluded that Ms. Stevens was an "insured" for purposes of the Testing Exclusions.

ARP responds that even if Ms. Stevens were an employee, she was not "an insured" because at the time she caused the injuries to Ms. Sweeney and Ms. Miller she was providing "professional health care services." Pl.'s Mem. at 28.  ARP is correct that both Policies specifically state that no employee is an "insured" for any bodily injury "arising out of his or her providing or failing to provide professional health care services." *Id.* Ex. 5 at p.7.  In other words, an employee is not "an insured" for injuries arising from the negligent provision of medical care.  Because the *Sweeney* and *Hatton* complaints were based on alleged errors by Ms. Stevens in her laboratory analysis of a Pap smear tests, Ms. Stevens does not fit the definition of an insured under the Policies. As a result, ARP argues, the Testing Exclusions cannot apply.  Pl.'s Mem. at 28.

As ARP correctly notes, Ohio Casualty makes no attempt to answer this argument. *See* Pl.'s Reply at 2-3.  In fact, Ohio Casualty implicitly concedes the point by describing the *Sweeney* and *Hatton* lawsuits as "medical malpractice claims."  Def.'s Opp. at 2.  Obviously, if Ms. Sweeney and Ms. Hatton were pursuing medical malpractice claims, it follows that the bodily injuries in question arose from Ms. Stevens's provision of "medical services."  The Court therefore agrees with ARP and finds that Ms. Sweeney was not "an insured" under the Testing Exclusions. Thus, the "tests" or "consultations" were not "performed by an insured."

Contrary to ARP's argument, this conclusion does not mean that the Testing Exclusions are inapplicable.  Even if the tests at issue were not performed "by" an insured, the Exclusions may still apply if the tests were performed "on behalf of" an insured.  Pl.'s Mem. Ex. 5 at 30; Ex. 7 at 57.  Thus, even though Ms. Stevens was not herself an insured under the Policies with

respect to claims arising from the cytopathology tests she performed, Ohio Casualty could still rely on the Testing Exclusions if she performed the tests "on behalf of" an insured, *i.e.* ARP.

ARP argues that Ms. Stevens could not have been acting "on behalf of" ARP because Judge Friedman found that she was AFIP's employee and, therefore, she was acting on AFIP's behalf.  Pl.'s Mem. at 29.  But again, Judge Friedman's later factual conclusions are irrelevant to Ohio Casualty's duty to defend based on the eight-corners rule.  There can be no dispute that ARP was "an insured" under both Policies or that both complaints alleged that Ms. Stevens was ARP's employee.  Therefore, a comparison of the plain language of the Testing Exclusions with the *Sweeney* and *Hatton* complaints indicates that Ms. Stevens performed the cytopathology tests "on behalf of an insured" — *viz.*, on behalf of ARP, her alleged employer.  Ohio Casualty therefore correctly relied on the Testing Exclusions to deny coverage to ARP with respect to the vicarious liability claims arising from Ms. Stevens's negligent performance of cytopathology tests.

## C.     The Negligent Hiring Claims

ARP also argues that even if Ohio Casualty properly concluded that the vicarious liability claims were covered by the Testing Exclusions, Ohio Casualty incorrectly concluded that the negligent hiring claims against ARP were also included.  Pl.'s Mem. at 29-30.  ARP's argument, somewhat underdeveloped in its briefs, is that the negligent hiring claims had "nothing to do with any negligence in 'testing' or 'consulting.'"  *Id.* at 30.  Although it goes too far to suggest that the claims have *nothing* to do with each other, it is fair to say that there is a conceptual distinction between a claim that ARP is vicariously liable for Ms. Stevens's negligence and a claim that ARP is liable in its own right for failing to exercise due care in hiring Ms. Stevens.  The question is whether this conceptual difference bears on the Testing Exclusions.

Ohio Casualty argues that other jurisdictions have consistently held that the "professional liability exclusion" applies to negligent hiring claims in medical malpractice cases, and that treating the negligent hiring claim differently in this case would reduce the Testing Exclusion to "meaningless nonsense" because it would convert it into "a rule of pleading as opposed to a substantive exclusion."   Def.'s Opp. Mem. at 5.

The Court does not agree with Ohio Casualty's rhetorical argument that treating the negligent hiring claim differently would render the Testing Exclusion "meaningless nonsense." Under the eight-corners rule, every claim for coverage is necessarily boils down to "a rule of pleading" because the insurance company's duty to defend depends on the pleadings.  *See Stevens*, 801 A.2d at 66 n.5 ("If the allegations of the complaint state a cause of action within the coverage of the policy the insurance company must defend.").  The main justifications for the rule are "to give certainty and definitiveness to the insurer's duty to defend" and to avoid "collateral proceedings" over "actual facts" to determine insurance coverage.  *Id.* at 71 (quoting *Fitzpatrick*, 575 N.E.2d at 96-97).  This certainty sometimes comes at the expense the insureds when, as in this case, a complaint pleads facts that ultimately turn out to be incorrect but that nonetheless exclude coverage. For the same reason, however, the rule also can produce seemingly unfair results for insurers: a plaintiff may plead facts that trigger coverage when, later in the litigation, those facts are revealed to be untrue.  Ohio Casualty cannot have butter on both sides of its bread — coverage is determined

by comparing the four corners of the complaint to the four corners of the policy, regardless of whether the result is in favor of coverage or against it.[1]

Ohio Casualty's argument on the merits is also problematic. Essentially, Ohio Casualty argues that the Testing Exclusion is a "professional liability exclusion" and that all jurisdictions that have considered the issue have concluded that such exclusion clauses cover claims for negligent hiring in medical malpractice cases. Def.'s Mem. at 5-12. The problem with this argument is that the Testing Exclusions at issue in this case are not the broad "professional liability exclusions" that Ohio Casualty thinks they are. In fact, the vaguely worded Testing Exclusions come nowhere close to resembling the exclusion clauses discussed in the cases upon which Ohio Casualty relies. *Compare, e.g.*, *Millers Cas. Ins. Co. of Tex. v. Flores*, 876 P.2d 227, 229 (N.M. 1994) (analyzing exclusion clause that exempted coverage for claims based on "rendering or failing to render any professional service including but not limited to . . . medical . . . services.") *with* Pl.'s Mem. Ex. 5 (exempting coverage for claims based on "an error, omission, defect, or deficiency in any test performed, or an evaluation, a consultation or advice given by or on behalf of any insured"). The Testing Exclusions simply make no mention of professional services, medical or otherwise.

Nonetheless, the logic of the cases cited by Ohio Casualty applies here, even though the cases are not factually analogous. Those cases state that it is the "origin of the damages[,] rather than . . . the legal theories alleged" that inform the analysis under the eight-corners rule. *Duncanville*

---

[1] Ohio Casualty also argues that ARP knew the policies were not general commercial liability policies and should not be entitled to coverage for "medical malpractice claims" which clearly fall outside the scope of such policies. Def.'s Mem. at 3-4. The Court understands Ohio Casualty's point; but again, the eight-corners rule does not take into account the intent of the parties in drafting the contract language — its focus is strictly on a comparison of the four corners of the complaint with the four corners of the insurance contract.

*Diagnostic Ctr., Inc. v. Atl. Lloyd's Ins. Co. of Tex.*, 875 S.W.2d 788, 789 (Tex. Ct. App. 1994). If an employee's injurious act (the "origin of the damages") were not covered by the insurance contract, then a claim for negligent hiring ("the legal theor[y] alleged") would also not be covered. The rationale for this result is that without the underlying injurious act, the employer's negligence in hiring the employee would not have caused the injury. *See id.* at 791-92 ("[The injury] could not have resulted from the negligent hiring . . . without the negligent rendering of professional medical services. The negligent acts and omissions were not independent and mutually exclusive; rather, they were related and interdependent. Therefore, the professional services exclusion operated to exclude coverage . . . .").

Here, the fact that *Sweeney* and *Hatton* both alleged "negligent hiring" against ARP does not change the fact that the origin of the injuries was Ms. Stevens's alleged testing errors. In other words, there would be no negligent hiring claims against ARP if Ms. Stevens had not been negligent in her own right. Thus, the negligent hiring claims were justifiably excluded under the Testing Exclusions. This conclusion is supported by the language of the Testing Exclusions themselves, which exempt from coverage claims "arising out of" any error in testing performed by or on behalf of an insured. Even though the complaints allege that ARP was negligent in hiring Ms. Stevens, the injuries in question were caused by — *i.e.* "arose out of" — Ms. Stevens's failure to perform the cytopathology tests properly. In that sense, the negligent hiring claims are similar to the vicarious liability claims because they seek to hold the employer responsible for the negligent acts of the employee.

There is no question that the eight-corners rule can produce harsh results when a complaint pleads facts, later shown to be false, that trigger an exclusion in the insurance contract.

That is why, presumably, some jurisdictions are moving away from strict adherence to the eight-corners rule.  But the District of Columbia is not among them; in fact, the D.C. Court of Appeals has recently reaffirmed its adherence to the rule.  *See Stevens*, 801 A.2d at 63.  An application of the eight-corners rule in this case reveals that Ohio Casualty's denials of coverage were not legally incorrect.  Accordingly, Ohio Casualty is entitled to judgment as a matter of law.

### IV.  CONCLUSION

For the foregoing reasons, the Court concludes that Ohio Casualty did not breach its contracts with ARP when it refused to defend or indemnify ARP against the *Sweeney* and *Hatton* lawsuits.  Ohio Casualty is therefore entitled to summary judgment on ARP's breach of contract claims.  And because Ohio Casualty did not wrongfully deny coverage, ARP's bad faith claims also fail as a matter of law.  Accordingly, judgment will be entered in favor of Ohio Casualty and the case will be dismissed.  A memorializing order accompanies this memorandum opinion.


Dated:  November 15, 2006.                        _____/s/_____
                                                  ROSEMARY M. COLLYER
                                                  United States District Judge